JOHN H. BARNETT and ABIGAIL S. BARNETT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barnett v. Commissioner
Docket No. 6234-72
United States Tax Court
T.C. Memo 1974-9; 1974 Tax Ct. Memo LEXIS 310; 33 T.C.M. (CCH) 25; T.C.M. (RIA) 74009; January 16, 1974, Filed. Stephen B. Clarkson, for the petitioners.
Thomas M. Ingoldsby, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION
FAY, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the taxable years 1968 and 1969 in the amounts of $13,642.46 and $545.99, respectively.
The issues presented for our determination are: (1) Whether the payments made by petitioner John H. Barnett to his former wife in *312 1968 qualify as periodic payments made in discharge of a legal obligation imposed upon him because of the marital or family relationship and (2) whether petitioner John H. Barnett 2 is entitled to claim the dependency exemption for his three children in the custody of his former wife for the taxable year 1969. [1]
FINDINGS OF FACT
Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.
Petitioners, John H. Barnett *313 (John) and Abigail S. Barnett, are husband and wife who maintained their residence in Steamboat Springs, Colorado, when the petition herein was filed. They filed joint Federal income tax returns for the taxable years 1968 and 1969 with the district director of internal revenue, Denver, Colorado. Any reference to "petitioner" hereinafter shall be deemed to mean John H. Barnett.
Petitioner was formerly married to Virginia Anne Gantner Barnett (Virginia). They were married on June 20, 1959. Three children were born during this marriage.
In September 1967, John and Virginia separated. Shortly thereafter petitioner met with an attorney to determine the amount of alimony payments a person in his income tax bracket would have to make. At this time petitioner was employed by 3 the University of Virginia Business School, receiving a salary of approximately $12,000 per year and was advised that $300 to $400 per month payments to Virginia would be appropriate.
Before December 1, 1967, John had a disagreement with his employer and submitted his resignation effective as of the end of the school semester in January of 1968.
Negotiations regarding, among other things, monetary payment *314 to Virginia proceeded between the parties. Based on the advice given to him, John rejected Virginia's demand of a $1,000 per month payment. Eventually a Separation Agreement ("the Agreement") compatible with the views of both parties was reached and executed on December 1, 1967. The Agreement provided, in part, a principal sum of $82,000 payable in installments to Virginia over a period of more than 10 years.
The payments were for her support and maintenance and the support, maintenance, and education of the children. In pertinent part the Agreement provides as follows:
8. In full discharge of the Husband's legal obligation to support and maintain the Wife and to support, maintain and educate the children, the Husband will pay to the Wife the following amounts amounting to $82,000.00 for the support and maintenance of the wife and the support, maintenance, and education of the children:
A. The sum of $42,000.00 payable as follows:
(1) Immediately upon the signing of this agreement the sum of $5,000.00.
(2) On or before January 10, 1968, one-third of the legal fees incurred by the Wife with respect to the negotiation and consummation 4 of this agreement and a sum equal *315 to the figure resulting, when the said one-third of the Wife's legal fees is subtracted from $25,000.00.
(3) Upon the sale of the house ("Belvedere") in Charlottesville presently owned by the Husband, but in any event by September 1, 1968, the remaining two-thirds of the legal fees incurred by the Wife with respect to the negotiation and consummation of this agreement and a sum equal to the figure resulting when the said two-thirds of the Wife's legal fees is subtracted from $12,000.00.
B. The sum of $40,000.00 payable as follows:
(1) On or before January 10th of each year, beginning in 1969 and ending in but including 1978, the sum of $4,000.00. In the event that the Wife shall remarry, such payments shall be reduced as follows:
(i) If the Wife remarries during the calendar years 1967 or 1968, all payments referred to in paragraph "B. (1)" hereof shall be in the amount of $1,000.
(ii) If the Wife remarries during the calendar year 1969, all payments beginning with the 1970 payment shall be in the amount of $1,100.
(iii) If the Wife remarries during the calendar year 1970, all payments beginning with the 1971 payments shall be in the amount of $1,200.
(iv) If the Wife remarries *316 during the calendar year 1971, all payments beginning with the 1972 payment shall be in the amount of $1,300.
(v) If the Wife remarries during the calendar year 1972, all payments beginning with the 1973 payment shall be in the amount of $1,400.
(vi) If the Wife remarries during the calendar year 1973, all payments beginning with the 1974 payment shall be in the amount of $1,500. 5 (vii) If the wife remarries during the calendar year 1974, all payments beginning with the 1975 payment shall be in the amount of $1,600.
(viii) If the Wife remarries during the calendar year 1975, all payments beginning with the 1976 payment shall be in the amount of $1,700.
(ix) If the Wife remarries during the calendar year 1976, all payments beginning with the 1977 payment shall be in the amount of $1,800.
(x) If the Wife remarries during the calendar year 1977, the 1978 payment shall be in the amount of $1,900.
The Agreement further provides that Virginia is to have custody of the children, but John is to be allowed the dependency exemptions for the three children. The Agreement in this regard reads as follows:
13. The Husband shall have the right, for the year 1967 and all future years, *317 to the allowance of the deduction for the exemption for dependents with respect to each of the children for purposes of all Federal, State, or other tax returns.
The Agreement is quite explicit in defining the rights and limitations of the parties. The intended purpose of the monetary payments to Virginia are clearly written:
11. The provisions made for the Wife and for the children in this agreement are, and are intended to be, in complete discharge of the Husband's obligation to support and maintain the wife and to support, maintain and provide for the education of the children, and are accepted by the Wife in full settlement and satisfaction of her claims respecting the Husband's obligations for her future support and maintenance 6 and for the future support, maintenance and education of the children, for which purposes the Wife agrees that the written provisions are adequate, fair and reasonable; and the Wife agrees that she will not assert for herself or for any of the children any claim for her support and maintenance or for the support, maintenance and education of any of the children other than as provided in this agreement. * * *
Due to petitioner's precarious income *318 status, a second agreement was entered into by the parents of both John and Virginia. The second agreement provided a guarantee by the parents that the payments provided in paragraphs 8A and 8B of the Agreement would be made. It further provided that those amounts stated in the Agreement would be the maximum to flow to Virginia from petitioner.
On January 11, 1968, the Circuit Court of Albermarle County, Virginia, granted Virginia Barnett a divorce a mensa et thoro. The Agreement was filed with the Court and it was confirmed, ratified, and approved by the decree.
On September 26, 1968, the Circuit Court for Albemarle County, Virginia, granted Virginia a divorce a vinculo. The court affirmed and incorporated its decree of January 11, 1968, into this decree.
Pursuant to the Agreement petitioner paid to Virginia $37,000 during 1968. Petitioners claimed this amount as an alimony deduction on their 1968 Federal income tax return. 7 Petitioners further claimed the three children born during the marriage of John and Virginia as dependents on their 1968 and 1969 Federal income tax returns.
In his statutory notice of deficiency dated July 13, 1972, respondent disallowed the *319 above deductions. The deficiency in 1968 relates solely to the claimed deduction of $37,000 as alimony. The denial by respondent of the claimed dependency exemption for 1968 was agreed to by petitioner prior to the issuance of the deficiency notice and the additional tax that resulted was assessed and paid.
OPINION
We consider first the status of petitioner's payments totaling $37,000 to Virginia in 1968 in light of sections 71 and 215. [2] In pertinent part, section 71 provides:
SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.
(a) General Rule. - * * *
(2) Written Separation Agreement. - If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in turst or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.
*320 8 * * *
(c) Principal Sum Paid in Installments. - (1) General rule. - For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.
(2) Where period for payment is more than 10 years. - If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.
* * *
Section 215 allows the husband to deduct amounts which are paid during his taxable year *321 and which are includable in the gross income of the wife by virtue of section 71.
In order for section 71 to be applicable, the payment must be made because of the family or marital relationship in recognition of the general obligation of support. Section 1.71-1(b) (4), Income Tax Regs. Irrespective of the absence of alimony under State law, a payment made in recognition of such obligation and which otherwise conforms to section 71 9 is includable in the gross income of the wife. See Taylor v. Campbell, 335 F.2d 841 (C.A. 5, 1964); Thomas E. Hogg, 13 T.C. 361 (1949); Tuckie G. Hesse, 7 T.C. 700 (1946). Conversely, a payment which is a division of property is capital in nature and not subject to the provisions of section 71 even though periodic and incident to divorce. Walter H. Weiner, 61 T.C. (1973); Ernest H. Mills, 54 T.C. 608 (1970), affd. 442 F.2d 1149 (C.A. 10, 1971); Lewis B. Jackson, Jr., 54 T.C. 125 (1970).
In the matter before us, petitioner maintains that the payments are in the nature of alimony and are therefore subject to the provisions of section 71. Respondent, on the other hand, *322 argues that the payments represent a property settlement of Virginia's interest in the assets of the marital estate and were not paid because of an obligation imposed by the marital or family relationship. Therefore, respondent maintains that the payments in question were not alimony as described in section 71. [3] 10 After closely reviewing all the relevant evidence in the record to determine the purpose of the payments at issue, we are convinced that the payments made by petitioner pursuant to paragraph 8 of the Agreement were alimony in nature and hence *323 subject to the provisions of section 71.
In making this determination, we have considered the Agreement and the circumstances surrounding its implementation. Although the labels attached to payments made in connection with divorces or separations are not controlling, Mills v. Commissioner, 442 F.2d 1149 (C.A. 10, 1971), affirming 54 T.C. 608 (1970); Taylor v. Campbell, supra; Enid P. Mirsky, 56 T.C. 664 (1971); Edith M. Gerlach, 55 T.C. 156 (1970), we think the language contained in the Agreement at hand is a clear and concise expression of the intent of the parties. [4] Paragraph 8, which describes the payments forthcoming to Virginia, clearly states the purpose of the payments:
8. In full discharge of the Husband's legal obligation to support and maintain the Wife and to support, maintain, and educate the children. * * *
We are of the belief that the parties were fully aware of the provisions of the Agreement and that it expressed their intent accurately. [5] Had petitioner and Virginia intended the payments *324 to be capital in nature, we are convinced that the Agreement 11 would have been drafted to express this intent.
Furthermore, an examination of the negotiations which eventually led to the execution of the Agreement indicates that alimony or support payable to Virginia was the intended result. [6] After the parties concluded that divorce was the proper action for their particular situation, petitioner was advised that $300 or $400 a month would be the appropriate amount he would have to pay Virginia for support. Virginia, on the other hand, took the position that $1,000 per month was the proper amount. After consultation and negotiation, the Agreement before us was reached and implemented. We think it clear that the Agreement accurately reflects the negotiations that preceded it and that the payments provided for therein are in the nature of alimony or support for Virginia.
For all of the reasons *325 above, we hold the payments made by petitioner to Virginia in 1968 to be in the nature of alimony or support in recognition of the general obligation imposed on petitioner because of the marital or family relationship. Therefore, the provisions of section 71 are applicable to the matter before us. 12 Having determined that section 71 is applicable we look specifically to sections 71(a) )2) and 71 (c) (2). Section 71(a) (2) provides generally that periodic payments made to the wife pursuant to a written separation agreement shall be includable in her gross income. The payments are hence deductible by the husband under section 215. Section 71(c) (2) states generally that where a written agreement provides for a principal sum payable to the wife over a period of more than ten years from the date of the agreement, the yearly payment will be considered periodic for the purposes of section 71(a) (2), but only to the extent of 10 percent of the entire principal sum. Notwithstanding section 71(c) (2), respondent's regulations provide an exception to the percentage limitation set forth in that statute.
Sections 1.71-1(d) (3) and (4), Income Tax Regs., provide that where payments are *326 to be made over a term ending more than 10 years from the date of the decree or agreement, the entire payment will be deemed periodic and therefore deductible if two conditions are satisfied: (1) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and (2) such payments are in the nature of alimony or an allowance for support. 13 It is the petitioner's position that the entire amount of the payments made to Virginia in 1968 should be considered as periodic payments for the purpose of section 71(a) (2). He argues that although section 71(c) (2) appears to be the appropriate provision here, respondent's regulatory exception to the general rules of section 71 is applicable to the situation before us. See sections 1.71-1(d) (3) and (4), Income Tax Regs. Therefore, petitioner maintains that the entire $37,000 is deductible by virtue of section 215. Respondent, on the other hand, insists that section 71(c) (2) is applicable and only 10 percent of the principal sum of $82,000 or $8,200, qualifies as a periodic payment and, hence, is deductible by petitioner in 1968. *327 We agree with respondent.
The crucial question before us is whether the conditions set forth in section 1.71-1(d) (3) (i), Income Tax Regs. have been met. We have previously determined that the second condition has been met; See section 1.71-1(d) (3) (i) (b). Therefore, an analysis of the first is in order. See section 1.71-1(d) (3) (i) (a).
The Agreement itself is devoid of any expressly stated contingencies in regard to the 1968 payments from John to Virginia. Petitioner therefore relies on the appropriate 14 State law. [7] He argues specifically that the law of the State of Virginia imposes a contingency on the payments and that the regulatory conditions are therefore met. We find petitioner's reliance misplaced.
The sole point of controversy is the effect of Virginia law on the continuation of payments provided for in the Agreement in the event of the death of either John or Virginia. [8] In the State of Virginia, the general rule is that a husband's *328 obligation to make support payments terminates at his death. [9] See Code of Virginia, section 20-107. However, we believe that the general rule is inapplicable to payments provided for by a separation agreement that is subsequently approved and/or ratified 15 in a divorce decree. The agreement constitutes a valid contract which is restricted from judicial modification or termination by Code of Virginia, § 20-109 [10] except in accordance with the terms of the contract. See McLoughlin v. McLoughlin, 211 Va. 365, 177 S.E. 2d 781 (1970), and Dienhart v. Dienhart, 210 Va. 101, 168 S.E. 2d 279 (1969).
*329 In McLoughlin, the parties entered into and executed an agreement whereby the husband agreed to pay the wife $100 per month for support and maintenance. A divorce a mensa et thoro was granted which approved, ratified, and confirmed the agreement between the parties. Later the divorce a mensa et thoro was merged into a divorce a vinculo. Subsequently, the husband 16 asked a Virginia circuit court to be relieved of the obligation to support his former wife because she had remarried. The circuit court refused and the Supreme Court of Appeals of Virginia affirmed the decision. The Court held that notwithstanding Code of Virginia, § 20-110 (1954), [11] it did not have the jurisdiction to eliminate the support payments because of remarriage. The agreement between the parties had been confirmed, ratified, and approved by the appropriate court and constituted a valid contract. Any subsequent modification would have had to be in accordance with the specific terms of the contract. See also Dienhart, supra.
*330 Although McLoughlin involved the continuation of payments after remarriage, we believe the legal principles expounded therein are equally applicable to the contingency of death. The Agreement before us has been confirmed, ratified, and approved by the appropriate court. Just as the McLoughlin decision held that the Agreement therein was a valid contract and declined to give effect to Code of Virginia, § 20-110 (1954), we likewise hold the Agreement before us to be a valid contract and decline to give application to the statute in Virginia regarding the continuation of support 17 payments in the event of death. Therefore, pursuant to the McLoughlin rational, since the Agreement before us contains no provision for modification or cessation of the payments in issue in the event of death, the payments are not subject to judicial modification or termination as a result of the death of either John or Virginia.
On brief, petitioner cites Durrett v. Durrett, 204 Va. 59, 129 S.E. 2d 50 (1963); and Foster v. Foster, 195 Va. 102, 77 S.E. 2d 471 (1953). These cases support the general rule that alimony payments to the wife, decreed *331 by the appropriate court, cease at the death of the husband. See Code of Virginia, § 20-107 (1954). However both of these cases distinguish between alimony payments decreed by a court and payments provided for by a contract agreement which is merely approved by a court. See Durrett v. Durrett, 129 S.E. 2d at 52, 53. See also Foster v. Foster, supra.Therefore, the rule in Durrett and Foster regarding the payment of alimony after death is inapplicable to the matter at hand. The Agreement before us constitutes a valid contract between the parties which has been confirmed, ratified and approved by a Virginia circuit court. See McLoughlin v. McLoughlin, supra.The annual payments provided therein to not automatically terminate at the death of John or Virginia, nor is a Virginia circuit court empowered to eliminate them. 18 For the reasons stated above, we think it clear that the payments in question are not subject to any of the contingencies set forth in section 1.71-1(d) (3) (i) (a), Income Tax Regs. and are not to be considered in their entirety as periodic for the purpose of section 71(a) (2). We hold, therefore, *332 that the payments come within section 71(c) (2) and hence 10 percent of the principal sum stated in paragraph 8 of the Agreement qualifies as a periodic payment in the taxable year 1968.
The second issue presented for our determination is whether petitioner, in the taxable year 1969, is entitled to the dependency exemptions for his three children in the custody of his former wife.
Pertinent to a decision here are the provisions of section 152(e) (2):
(2) Special rule. - The child of parents described in paragraph (1) shall be treated as having received over half of his support during the calendar year from the parent not having custody if - (A) (i) the decree of divorce or of separate maintenance, or a written agreement between the parents applicable to the taxable year beginning in such calendar year, provides that the parent not having custody shall be entitled to any deduction allowable under section 151 for such child, and
(ii) such parent not having custody provides at least $600 for the support of such child during the calendar year, or
(B) (i) the parent not having custody provides $1,200 or more for the support of such child (or if there is more than one such child, *333 $1,200 or more for all of such children) for the calendar 19 year, and
(ii) the parent having custody of such child does not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody.
For the purposes of this paragraph, amounts expended for the support of a child or children shall be treated as received from the parent not having custody to the extent that such parent provided amounts for such support.
* * *
For petitioner to prevail on this issue, he must show what amounts he has expended for the benefit of his children. [12] In the record he has offered no evidence other than pointing to paragraph 8 of the Agreement. We think this is insufficient.
Paragraph 8 provides payment to Virginia in 1969 in the amount of $4,000 for her support and maintenance and the support maintenance, and education of the children. We think this is inadequate to designate or "fix" any specific portion of the payment as payment made for the support of the children. See Commissioner v. Lester, 366 U.S. 299 (1961). Allocations for child support in agreements such as the one before us must be specifically designated *334 and not left for determination by inference or conjecture. Lester, supra.20 As the Agreement before us is not specific regarding the payments set forth in paragraph 8, we are unable to determine what portion is for child support. [13]
Therefore, petitioner has not established what amount he has contributed for the support of his children and, accordingly, is not entitled to the dependency exemptions for them. [14]
*335 Decision will be entered under Rule 155. Footnotes
1. At trial, petitioner, in his opening statement brought up for the first time this same issue for the taxable year 1968. The issue was not discussed again at trial, but was brought up on brief where petitioner argued the dependency exemption question for the taxable years 1968 and 1969 jointly. Respondent, on brief, addressed himself to this issue solely for the taxable year 1969. We do not believe the dependency exemption issue for the year 1968 is properly before this Court. It was not raised in the pleadings and we therefore do not consider it. See Eugene G. Feistman, T.C. Memo. 1971-137↩, affd. per curiam (C.A. 9, April 10, 1973) in an unpublished opinion.
2. All section references are to the Internal Revenue Code of 1954, unless otherwise indicated. ↩
3. Respondent advances two theories with respect to why the payments in question are not alimony payments within the meaning of section 71. He first argues that the total of the payments called for in paragraph 8 of the Agreement are in the nature of a division of property and secondly that the payments in issue are in the nature of a property settlement separate and severable from the other payments in the Agreement. We are convinced that the payments in question are an integral part of the payout schedule described in paragraph 8 and cannot be separated from it. We have therefore treated it as such in the opinion. ↩
4. The intent of parties is controlling. Phinney v. Mauk, 411 F.2d 1196↩ (C.A. 5, 1969).
5. See paragraph 11 of the Agreement.↩
6. See Enid P. Mirsky, 56 T.C. 664 (1971), and Grant R. Bishop, 55 T.C. 720↩ (1971), where one of the factors looked to in determining the nature of a particular payment was the negotiations preceding a divorce.
7. Section 1.71-1(d) (3) (ii) (a) provides:
(a) The contingencies described in subdivision (i) (a) of this subparagraph are set forth in the terms of the decree, instrument, or agreement, or are imposed by local law, * * *↩
8. Petitioner has not contested respondent's assertion that the contingencies of remarriage or change in economic status of either party will not affect the payments in issue. Nor do we. See McLoughlin v. McLoughlin, 211 Va. 365, 177 S.E. 2d 781 (1970); and Dienhart v. Dienhart, 210 Va. 101, 168 S.E. 2d 279↩ (1969).
9. In support of his position that the payments to Virginia will cease at her death, petitioner cites Code of Virginia, § 20-109.1, as amended. This statute as amended was effective in 1972 and is therefore inapplicable to the taxable year 1968 which is before us.↩
10. Code of Virginia, § 20-109 (1954) provides:
§ 20-109. Changing alimony; effect of stipulations as to alimony. - Upon petition of either party the court may increase, decrease, or cause to cease, any alimony that may thereafter accrue whether the same has been heretofore or hereafter awarded, as the circumstances may make proper; provided, however, if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed with the pleadings or depositions, then no decree or order directing the payment of alimony, suit money or counsel fee shall be entered except in accordance with that stipulation or contract unless such party raise objection thereto prior to the entry of the decree. * * * This statute was amended in 1972 to permit a court to modify written agreements if certain contingencies occur. As the year before us is 1968, the law of Virginia as of 1968 controls the resolution of this issue.↩
11. § 20-110. Alimony to cease on remarriage. - If any person to whom alimony has been awarded shall thereafter marry, such alimony shall cease as of the date of such marriage. * * *↩
12. To comply with section 152(e) (2) (A), petitioner must show that he has provided at least $600 for the support of each child he has claimed as a dependent. See section 1.152-4(d) (2), Income Tax Regs.↩ To shift the burden of proof from himself under the provisions of section 152(e) (2) (B), petitioner must show that he has contributed at least $1,200 for the combined support of all of his children.
13. The burden of proof rests with the petitioner. We do not believe he has met this burden. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a) of the Tax Court Rules of Practice and Procedure.↩
14. As previously indicated, the dependency exemption issue for the taxable year 1968 is not properly before us. Even if it were, however, we would deny petitioner the exemptions for the taxable year 1968 for the same reasons we have denied petitioner the dependency exemptions for the taxable year 1969.↩